UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT A. McCORMICK; ROBERT J. McCORMICK;
and ELEVEN AND CO., LLC,

                                  Plaintiffs,

            vs                                               1:05-CV-694

TOWN OF CLIFTON PARK; TOWN OF CLIFTON
PARK PLANNING BOARD; TOWN OF CLIFTON
PARK HISTORIC PRESERVATION COMMISSION;
and STEVEN BULGER, JASON KEMPER, PHILLIP
BARRETT, RAINEY LITTMAN, KEVIN BOWMAN,
JOHN L. SCHERER, JAY RUSSELL, TONY KARAM,
and RAY D'AMICO, Each in their Individual and
Official Capacity,

                                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                      OF COUNSEL:

REHFUSS, LIGUORI & ASSOCIATES, PC        STEPHEN J. REHFUSS, ESQ.
Attorneys for Plaintiffs                             JENNIFER CARLSON, ESQ.
40 British American Boulevard
Latham, NY 12110

MURPHY BURNS BARBER & MURPHY, LLP     PETER G. BARBER, ESQ.
Attorneys for Defendants                           JAMES TRAINOR, ESQ.
Executive Woods
4 Atrium Drive
Albany, NY 12205

DAVID N. HURD
United States District Judge

## **O R D E R**

## I. **INTRODUCTION**

Plaintiffs Robert A. McCormick, Robert J. McCormick and Eleven and Co., LLC (collectively "plaintiffs"), own a proposed subdivision called Curnyn Meadows in the Town of Clifton Park in Saratoga County, New York. The defendants, the Town of Clifton (the

"Town"), its Planning Board the "Board"), its Historic Preservation Commission (the "Preservation Commission") and various members of those entities, (collectively "defendants") were involved in events related to the denial of plaintiffs' subdivision application.

Pursuant to 42 U.S.C. § 1983, plaintiffs allege violations of the Taking Clause, the Due Process Clause and the Equal Protection Clause. Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint. Plaintiffs oppose. Oral argument was heard on October 28, 2005 in Albany, New York. Decision was reserved.

## II. **FACTS**

Except as noted, the following facts were taken from the complaint.

Four years before the events of this case, in June of 1998, plaintiffs purchased 168 acres of rural farmland in the Town. (Docket No. 1, Complaint ¶ 1.) The Town was also interested in the property but was outbid by the plaintiffs. Id. at ¶ 15. Defendant Phillip Barret ("Barret"), the Town Supervisor, has stated his desire "to turn the land in the western part of Clifton Park, including plaintiffs' property, into park land." Id. at ¶¶ 53, 74.

On November 20, 2002, plaintiffs filed an application for a subdivision permit to create Curnyn Meadows. The plan would establish 20 large residential lots over 120 acres of the property. Id. at ¶ 16. At the time of plaintiffs' application this type of subdivision was a permitted use under the Town's zoning ordinances. Id.

While the application was pending plaintiffs found it necessary to demolish an old barn on the property and accordingly applied for and received a permit to remove the barn. Some local citizens objected to the demolition and plaintiffs responded to community concern about the possible loss of a historical structure. They offered to contribute $10,00 to relocate

the barn but the Town declined the offer. Id. at ¶ 21. Instead, plaintiffs and the Preservation Commission agreed that plaintiffs would document the barn through photographs. Plaintiffs paid $2,000 for more than ninety photographs which they provided to the Town. Id.

In May of 2003, as plans for the development seemed to be progressing, a local real estate agent defendant Raine Littman ("Littman") approached plaintiffs and expressed her interest in listing the Curnyn Meadows project. Id. at ¶ 19. She followed up with phone calls but the plaintiffs declined her repeated offers. Id. Littman was also a member of the Preservation Commission. From this time forward, she actively opposed the plans for Curnyn Meadows.

On or around May 22, 2003, engineers hired by the Town issued comments and recommendations regarding the subdivision project. One of the concerns included the plans for the water system. As the Town was in the process of developing a new water district in the area it was recommended that Curnyn Meadows join that water district. Id. at ¶ 42. However, the Town's plans were in the preliminary stages. Thus, when plaintiffs submitted a map, plan, and report to the planning Board regarding the project on May 25, 2003, they were not able to address the water system concerns. Id. at ¶ 43.

When the barn was demolished on June 3, 2003 there was a media flurry which painted plaintiffs in a bad light. Plaintiffs claim defamatory statements were made by defendants Littman, Barrett, John Scherer ("Scherer"), the Town's Historian, Jason Kemper, Director of Planning for the Board, and Steven Bulger, Chairman of the Board. Id. at ¶ 22. There was also a conflict between plaintiff Robert A. McCormick and Scherer at Curnyn Meadows regarding the barn. Scherer filed an report on June 15, 2003 about the incident and plaintiffs allege that the statement was false and defamatory. Id. at ¶ 23.

The tension triggered by the barn razing lingered through the summer and fall.  On August 20, 2003,  plaintiffs filed a Notice of Claim against the Town alleging defamation and harassment relating to the events surrounding the barn razing.  Id. at ¶ 25.  In September, Barret attempted to have Scherer's previous complaint pursued by the New York State police.  In early October, defendants hired a private investigator to visit, and allegedly intimidate, Robert A. McCormick and his attorney in an attempt to persuade them to drop the Notice of Claim.  Id. at ¶¶ 27, 28, 65.

There was also growing community concern regarding other aspects of the proposed subdivision.  The Town and the surrounding areas were once Native American trade routes and hunting grounds.  Upon request, New York State Historic Preservation Office ("SHPO") advises local communities on local preservation environmental reviews, under the provisions of the State Environmental Quality Review Act ("SEQRA").  Littman claimed that she had received a phone call from a local citizen who had seen artifacts on the plaintiffs' property as a child when her uncle owned the land.  Despite the fact that the Historic Commission had reliable information refuting this claim, the Town involved the state and an archeological survey was required.  Id. at ¶¶ 30, 32.  On June 13, 2003, SHPO recommended an archeological survey be conducted on the plaintiffs' land to determine whether or not any archeological sites might be implicated.

By the time of the Preservation Commission's June 26, 2003 meeting, members were openly concerned with delaying development of Curnyn Meadows.  At the meeting, Littman notified the Preservation Commission that there were three state registered Native American sites located on the property and that plaintiff would have to conduct and archeological survey of the area.  Id. at ¶ 29.  She claimed that state involvement should be encouraged to

expand the scope of the study. Littman explained that the minimum thirty-day SEQRA application period would provide time to enact a moratorium on developing land with potential historic significance. However, "she was biased on th[e] matter and would only be involved as the commission secretary." Id. at ¶ 30.

Plaintiffs were informed that they have to get the survey because development was proposed within one mile of an archeological site. Id. at ¶ 36. They allege that SHPO and the Preservation Commission "did not require archeological surveys of this type and nature on other proposed developments within the Town of Clifton Park which were found to be within one mile of an archeological significant site." Id. at ¶ 36.

The survey did not turn up any artifacts. Id. at ¶ 38. But then, as defendants were aware, in the 1970's the property was graded for conversion into rugby fields by a previous owner. Id. at ¶ 34. SHPO's Phase 1 Archeological Investigation report was presented to the Board in September 2003. It related SHPO's conclusion that no further studies were warranted. Id. at ¶ 39.

On July 23, 2003, the Saratoga County Planning Board deemed the plaintiffs' land use application incomplete due plaintiff's failure to address problems with the water supply. Id. at ¶ 46. Plaintiffs claim they received insufficient information from the Town to submit a plan up to specifications.

In August, plaintiffs did submit an amended report/application based on the preliminary water district plans it received from the Town. But, plaintiffs contend that they did not receive any technical plans from the Town until two weeks before the eventual denial and the plans they did receive were too preliminary to help with preparing the application. Id. at ¶¶ 48, 51.

On September 23, 2003, the Board rejected the Curnyn Meadows subdivision application. Id. at ¶ 50. The denial was based on several factors. First, the afternoon of the meeting SHPO notified the Board that it would reconsider its previous findings pending further study of the project because of information which had come to light after the completion of its report. (Docket No. 9, Ex, J, Planning Board September 23, Meeting Minutes.) The Town's Resolution #36 lists the reasons for the denial:

> the applicant or its consultants did not adequately and completely respond in writing to the comments raised by the town Engineer, said comments being identified in May 22, 2003 and an August 7, 2003 letter from Clough, Harbor, and Associates, LLP to Steven Bulgur, Chairman on the Town of Clifton Park Planning Board . . .; the applicant or its consultants did not provide plans suitable for preliminary approval of the method of water supply to the proposed project; the applicant did not adequately and completely respond in writing to comments raised during the public hearing with respect to potential drainage impacts and impacts on historic resources; the application did not receive approval from the Saratoga County Planning Board; the Planning Board could not make a determination pursuant to SEQRA based on the lack of the above information to be provided by the applicant or its consultants.

(Docket 9, Ex A, Resolution # 36.)

On October 6, 2003, the Town enacted a moratorium on development pending environmental impact studies. (Complaint ¶ 52.) The moratorium applied to plaintiffs subdivision plan. Plaintiffs seek damages caused by the delay in their ability to develop the property.

## III. DISCUSSION

Plaintiffs specifically allege two types of constitutional violations under 42 U.S.C. § 1983; violations of the Taking Clause and the Due Process Clause. The complaint also attempts to allege a violation of the Equal Protection Clause. The claims will be discussed in turn.

### A. Motion to Dismiss Standard

On a motion to dismiss, the allegations in the complaint are accepted as true. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiffs' favor. See Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hasset, 886 F.2d 8, 11 (2d Cir. 1989). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). Therefore, the defendants' present motion should only be granted if it appears that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Grandon, 147 F.3d at 188; see also Goldman, 754 F.2d at 1065.

### B. Taking Claim (Second Cause of Action)

Plaintiffs allege that defendants' interference with, and denial of, preliminary approval of their subdivision application constitutes an unconstitutional taking of its property in violation of the Fifth Amendment. Of course, the Fifth Amendment "does not proscribe the taking of property, it proscribes taking without just compensation." Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194 (U.S. 1985) (citing Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 297 (1981)).  "A landowner 'has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State.'" Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 379 (2d Cir. 1995) (quoting Williamson, 473 U.S. at 195.)

Plaintiffs have not alleged, either in the complaint or in response to defendants' motion, that they sought compensation through any available state remedy and thus the Taking claim is not ripe. Defendants' motion to dismiss the claim on grounds that plaintiffs failed to exhaust their state administrative remedies will be granted.

### C. Due Process Claims (First, Third and Fourth Causes of Action)

Plaintiffs allege that defendants' conduct violated their Due Process rights under the First, Second and Fourth causes of Action. (Complaint ¶¶ 64, 78, 84.) The parties address the claims in terms of both substantive and procedural due process. Both claims require a plaintiffs to demonstrate a that they had a constitutionally cognizable property interest in the granting of the application. See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001); Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir. 1994); Scott v. Town of Monroe, 306 F. Supp. 2d 191, 195 (D. Conn. 2004); Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996) (citing Zahra v. Town of Southold, 48 F.3d 674, 679-80 (2d Cir. 1995)).

This Circuit applies a strict "entitlement test" to define property interests in land use regulation cases. DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 130 (2d Cir. 1998) (citing RRI Realty v. Incorporated Village of Southampton, 870 F.2d 911, 918 (2d Cir. 1989)). "A 'legitimate claim of entitlement' exists where, under applicable state law, 'absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted.'" Harlen Assocs., 273 F.3d at 504 (citing Walz v. Town of Smithtown, 46 F.3d 162, 168 (2d Cir. 1995)). As a general rule,"entitlement turns on whether the issuing authority lacks discretion to deny the permit, i.e., is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." Id. (quoting Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999)).

Thus, in order to establish a federally protectable property interest in their subdivision permit, plaintiffs must show that, at the time the permit was denied, there was no uncertainty regarding their entitlement to it under applicable state or local law, and the Board had no discretion to withhold it in their particular case. Natale, 170 F.3d at 263.

Plaintiffs do not argue that the planning Board lacks broad discretion in making subdivision determinations, but rather that the Town interfered with their ability to meet the Town's requirements in not providing sufficient information regarding the water district specifications. Plaintiffs contend that if they had received the proper information in time their plan would certainly would have been entitled to preliminary approval.

Plaintiffs focus on the conduct of the defendants, but even egregious conduct and "politically-influenced procedural irregularities" do not create the requisite property interest. See Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 58 (2d Cir. 1985)  Nor does an entitlement arise "simply because it is likely that broad discretion will be favorably exercised." RRI Realty Corp. v. Southampton, 870 F.2d 911, 918 (2d Cir. 1989); DLC Mgmt. Corp., 163 F.3d at 131. Taking the facts of the complaint as true, it is accepted that the plaintiffs' problem in meeting the Town's requirements in regards to the water system portion of the project was due to the preliminary nature of the Town's water district plans in the summer of 2003. Indeed, plaintiffs have not alleged that the Town was anything but legitimately engaged in that process. However, plaintiffs ignore the fact that the water system problems were not the only reason listed for the denial.

There were other, legally-relevant factors considered by the Board. The Board considered potential drainage impacts on to neighboring property. The neighbor, Mr Eell's,

was present at the meeting and predicted an amicable resolution to his concerns but noted that the Saratoga Soil and Water agency had visited the site and planned to issue a report. (Meeting Minutes.) The Town's consulting engineer listed concerns involving a "cluster" designation for the plan, access and easement concerns regarding one lot, and wetland impacts. See N.Y. TOWN LAW § 266 (listing road and drainage issues as factors for consideration in subdivision review). The Saratoga County Planning Board had declined to approve the plan. See N.Y. GEN. MUN. LAW § 239-m (5) (such disapproval requires a majority- plus-one vote of the municipal authority to act contrary to the recommendation). The afternoon of the meeting, SHPO indicated that more study was required before SEQRA concerns could be eliminated. See N.Y COMP. CODES R. & REG. § 617.4 (archeological concerns are proper criteria for consideration of Phase I SEQRA determinations). These factors, and the combination of these factors, clearly illustrate the scope the discretion which frames this type of land use determination and refutes the argument of clear entitlement to the granting of preliminary approval. Plaintiff has not alleged that these factors are impermissible considerations or that they fall outside an alternative and/or narrowly defined scope of review.

The defendants' motion to dismiss the Due Process claims will be granted as plaintiffs failed to demonstrate the requisite property interest in the subdivision permit.

**D. Equal Protection Claim**

In opposition papers, plaintiffs attempt to state an Equal Protection claim. (Docket No. 9 , Pls' Resp. Opp. 16 17.) They allege:

> The minutes of the Planning Board on the date in which the McCormick's application was denied is full of similar applications that were approved. . . The

> plaintiffs were specifically subjected to conditions that no other proposed subdivision was at the time. For example, the Curnyn Meadows project was the only project voted on in that time frame that was required to undergo archeological testing. . . .These instances of unequal treatment were the direct result of the dependants' malicious intentions to punish the plaintiffs.

Id. The attached exhibits appear to support their contentions.

However, the sixteen-page complaint which purports to state four causes of action contains only one paragraph which relates to the elements of the Equal Protection claim. Paragraph 36 alleges that SHPO, which is not a defendant in this action, and the Preservation Commission "did not require archeological surveys of this type and nature on other proposed developments within the Town of Clifton Park, which were found to be within one mile of an archeologically alleged significant site." This allegation is simply insufficient to state an Equal Protection claim.

Yet, in their reply, the defendants, without objection to this pleading deficiency, have addressed the claim on the merits as it was stated in the opposition papers. This claim will not be addressed as presented. However, plaintiffs will be given leave to amend the complaint to incorporate the pleading attempted, and acquiesced to, through motion practice. No opinion is to be inferred as to the merit of such an effort, only that, any further consideration of this claim requires redrafting of the complaint to reflect the legal nature of the Equal Protection controversy between the parties.

## IV. **CONCLUSION**

The Taking claim is not ripe as plaintiffs failed to exhaust their state administrative remedies. Plaintiffs failed to demonstrate a constitutionally cognizable property interest as

required to state a Due Process Claim. Plaintiff will be granted leave to amend the complaint to attempt to state the Equal Protection claim addressed by the parties in the motion papers.

Therefore it is

ORDERED that

(1) Defendants' motion to dismiss the Taking and Due Process claims is GRANTED and the First, Second, Third and Fourth causes of action are DISMISSED;

(2) Defendants' motion to dismiss the Equal Protection claim is DENIED with leave to renew the motion following the filing of an amended complaint; and

(3) Plaintiff may file and serve an amended complaint alleging an Equal Protection claim only, on or before January 31, 2006. Failure to file and serve an amended complaint by that date will result in a judgment being entered dismissing the complaint with prejudice.

IT IS SO ORDERED.

United States District Judge

Dated:   January 11, 2006
         Utica, New York.