UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT A. McCORMICK; ROBERT J. McCORMICK;
and ELEVEN AND CO., LLC,

                          Plaintiffs,

        vs                                                          1:05-CV-694

TOWN OF CLIFTON PARK; TOWN OF CLIFTON
PARK PLANNING BOARD; TOWN OF CLIFTON
PARK HISTORIC PRESERVATION COMMISSION;
and STEVEN BULGER, JASON KEMPER, PHILLIP
BARRETT, RAINEY LITTMAN, KEVIN BOWMAN,
JOHN L. SCHERER, JAY RUSSELL, TONY KARAM,
and RAY D'AMICO, Each in their Individual and
Official Capacity,

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                      OF COUNSEL:

REHFUSS, LIGUORI & ASSOCIATES, PC       STEPHEN J. REHFUSS, ESQ.
Attorneys for Plaintiffs                           JENNIFER CARLSON, ESQ.
40 British American Boulevard
Latham, NY 12110

MURPHY BURNS BARBER & MURPHY, LLP     PETER G. BARBER, ESQ.
Attorneys for Defendants                         JAMES TRAINOR, ESQ.
Executive Woods
4 Atrium Drive
Albany, NY 12205

DAVID N. HURD
United States District Judge

## MEMORANDUM DECISION and ORDER

## I. INTRODUCTION

        Plaintiffs Robert A. McCormick, Robert J. McCormick, and Eleven and Co., LLC (collectively "plaintiffs"), own a proposed subdivision called Curnyn Meadows in the Town of Clifton Park in Saratoga County, New York.  The defendants, the Town of Clifton Park (the

"Town"), its Planning Board the ("Board"), its Historic Preservation Commission (the "Preservation Commission") and various members of those entities, (collectively "defendants") were involved in events related to the denial of plaintiffs' subdivision application.

Pursuant to 42 U.S.C. § 1983 ("§ 1983"), plaintiffs' amended complaint alleges violations of the Equal Protection Clause of the Fourteenth Amendment. Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the amended complaint. Plaintiffs oppose. Oral argument was heard on April 28, 2006 via video-conference between the Utica and Albany federal courthouses. Decision was reserved.

## II. **FACTS**

As this is the second motion to dismiss filed in this action, the facts as alleged in the amended complaint have been related previously and will simply be repeated here with some modification to reflect the amendment of the complaint.

Four years before the events of this case, in June of 1998, plaintiffs purchased 168 acres of rural farmland in the Town. (Docket No. 14, Amended Complaint ¶ 15.) The Town was also interested in the property but was outbid by the plaintiffs. Id. Defendant Phillip Barrett ("Barrett"), the Town Supervisor, has stated his desire "to turn the land in the western part of Clifton Park, including plaintiffs' property, into park land." Id. at ¶ 58.

On November 20, 2002, plaintiffs filed an application for a subdivision permit to create Curnyn Meadows. The plan would establish 20 large residential lots over 120 acres of the property. Id. at ¶ 16. At the time of plaintiffs' application this type of subdivision was a permitted use under the Town's zoning ordinances. Id.

While the application was pending plaintiffs found it necessary to demolish an old barn on the property and accordingly applied for and received a permit to remove the barn. Some local citizens objected to the demolition and plaintiffs responded to community concern about the possible loss of a historical structure. They offered to contribute $10,000 to relocate the barn but the Town declined the offer. Id. at ¶ 21. Instead, plaintiffs and the Preservation Commission agreed that plaintiffs would document the barn through photographs. Plaintiffs paid $2,000 for more than ninety photographs which they provided to the Town. Id.

In May of 2003, as plans for the development seemed to be progressing, a local real estate agent defendant Rainey Littman ("Littman") approached plaintiffs and expressed her interest in listing the Curnyn Meadows project. Id. at ¶ 19. She followed up with phone calls but the plaintiffs declined her repeated offers. Id. Littman was also a member of the Preservation Commission. From this time forward, she actively opposed the plans for Curnyn Meadows.

On or around May 22, 2003, engineers hired by the Town issued comments and recommendations regarding the subdivision project. One of the concerns included the plans for the water system. As the Town was in the process of developing a new water district in the area it was recommended that Curnyn Meadows join that water district. Id. at ¶ 45. However, the Town's plans were in the preliminary stages. Thus, when plaintiffs submitted a map, plan, and report to the planning Board regarding the project on May 25, 2003, they were not able to address the water system concerns. Id.

When the barn was demolished on June 3, 2003 there was a media flurry which painted plaintiffs in a bad light. Plaintiffs claim defamatory statements were made by

defendants Littman, Barrett, John Scherer ("Scherer"), the Town's Historian, Jason Kemper, Director of Planning for the Board, and Steven Bulger, Chairman of the Board. Id. at ¶ 22. There was also a conflict between plaintiff Robert A. McCormick and defendant Scherer at Curnyn Meadows regarding the barn. Scherer filed a report on June 15, 2003 about the incident and plaintiffs allege that the statement was false and defamatory. Id. at ¶ 23.

The tension triggered by the barn razing lingered through the summer and fall. On August 20, 2003, plaintiffs filed a Notice of Claim against the Town alleging defamation and harassment relating to the events surrounding the barn razing. Id. at ¶ 25. In September, defendant Barrett attempted to have Scherer's previous complaint pursued by the New York State police. In early October, defendants hired a private investigator to visit, and allegedly intimidate, plaintiff Robert A. McCormick and his attorney in an attempt to persuade them to drop the Notice of Claim. Id. at ¶¶ 26, 27.

There was also growing community concern regarding other aspects of the proposed subdivision. The Town and the surrounding areas were once Native American trade routes and hunting grounds. Upon request, New York State Historic Preservation Office ("SHPO") advises local communities on local preservation environmental reviews, under the provisions of the State Environmental Quality Review Act ("SEQRA"). Defendant Littman claimed that she had received a phone call from a local citizen who had seen artifacts on the plaintiffs' property as a child when her uncle owned the land. Despite the fact that the Historic Commission had reliable information refuting this claim, the Town involved the state and an archeological survey was required. Id. at ¶¶ 30, 32. On June 13, 2003, SHPO recommended an archeological survey be conducted on the plaintiffs' land to determine whether or not any archeological sites might be implicated.

By the time of the Preservation Commission's June 26, 2003 meeting, members were openly concerned with delaying development of Curnyn Meadows. At the meeting, defendant Littman notified the Preservation Commission that there were three state-registered Native American sites located on the property and that plaintiff would have to conduct an archeological survey of the area. Id. at ¶ 29. She claimed that state involvement should be encouraged to expand the scope of the study. She explained that the minimum thirty-day SEQRA application period would provide time to enact a moratorium on developing land with potential historic significance. However, "she was biased on th[e] matter and would only be involved as the commission secretary." Id. at ¶ 30.

Plaintiffs were informed that they had to get the survey because development was proposed within one mile of an archeological site. Id. at ¶ 37. They allege that SHPO and the Preservation Commission "did not require archeological surveys of this type and nature on other proposed developments within the Town of Clifton Park, which were found to be within one mile of an archeological significant site." Id.

The survey did not turn up any artifacts. Id. at ¶ 39. But then, as defendants were aware, in the 1970's the property was graded for conversion into rugby fields by a previous owner. Id. at ¶ 34. SHPO's Phase 1 Archeological Investigation report was presented to the Board in September 2003. It related SHPO's conclusion that no further studies were warranted. Id. at ¶ 40.

On July 23, 2003, the Saratoga County Planning Board deemed the plaintiffs' land use application incomplete due plaintiff's failure to address problems with the water supply. Id. at ¶ 49. Plaintiffs claim they received insufficient information from the Town to submit a plan up to specifications.

In August 2003, plaintiffs did submit an amended report/application based on the preliminary water district plans it received from the Town. But, plaintiffs contend that they did not receive any technical plans from the Town until two weeks before the eventual denial and the plans they did receive were too preliminary to help with preparing the application. Id. at ¶ 51.

On September 23, 2003, the Board rejected the Curnyn Meadows subdivision application. Id. at ¶ 50. The denial was based on several factors. First, the afternoon of the meeting SHPO notified the Board that it would reconsider its previous findings pending further study of the project because of information which had come to light after the completion of its report. (Docket No. 9, Ex, J, Planning Board September 23, Meeting Minutes.) The Town's Resolution #36 lists the reasons for the denial:

> the applicant or its consultants did not adequately and completely respond in writing to the comments raised by the town Engineer, said comments being identified in May 22, 2003 and an August 7, 2003 letter from Clough, Harbor, and Associates, LLP to Steven Bulgur, Chairman on the Town of Clifton Park Planning Board . . .; the applicant or its consultants did not provide plans suitable for preliminary approval of the method of water supply to the proposed project; the applicant did not adequately and completely respond in writing to comments raised during the public hearing with respect to potential drainage impacts and impacts on historic resources; the application did not receive approval from the Saratoga County Planning Board; the Planning Board could not make a determination pursuant to SEQRA based on the lack of the above information to be provided by the applicant or its consultants.

(Docket 9, Ex A, Resolution # 36.)

On October 6, 2003, the Town enacted a moratorium on development pending environmental impact studies. (Amended Complaint ¶ 57.) The moratorium applied to plaintiffs' subdivision plan. Plaintiffs seek damages caused by the delay in their ability to develop the property.

## III. DISCUSSION

### A. Motion to Dismiss Standard

On a motion to dismiss, the allegations in the complaint are accepted as true. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiffs' favor.  See Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hasset, 886 F.2d 8, 11 (2d Cir. 1989).  The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  Therefore, the defendants' present motion should only be granted if it appears that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Grandon, 147 F.3d at 188; see also Goldman, 754 F.2d at 1065.

### B. Failure to Exhaust State Remedies

Defendants argue that plaintiffs are precluded from bringing their Equal Protection claim pursuant to § 1983 because they failed to exhaust their state judicial remedies before filing in federal court.

 "As the Supreme Court has clearly held, the exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983.'" Wilbur v. Harris, 53 F.3d 542, 544 (2d Cir. 1995) (quoting Patsy v. Board of Regents of the State of Fla., 457 U.S. 496, 516 (1982)).  Clearly, the existence of available state forums does not compel their use. Roach v. Morse, 440 F.3d 53, 57 (2d Cir. 2006).  "Congress intended [section 1983] to 'throw open the doors of the United States courts' to individuals

who were threatened with or who had suffered, the deprivation of constitutional rights . . . and to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary." Patsy, 457 U.S. at 505 (citation omitted). Accordingly, federal courts do not require exhaustion absent explicit Congressional direction. Wilbur, 53 F.3d at 545 (listing cases). There is certainly no such direction applicable to this case.

Defendants attempt to characterize the instant Equal Protection claim as a Due Process claim and cite case law for the proposition that bringing a Due Process claim requires exhaustion of state judicial remedies. "Such [due process] claims do require analysis of state remedies because the constitutional violation on which to base a § 1983 claim is not complete until life, liberty, or property is deprived without due process of law." Id. at 544 (citing Zinermon v. Burch, 494 U.S. 113, 125-26 (1990)); see Narumanchi v. Board of Trustees, 850 F.2d 70, 73 (2d Cir. 1988) (explaining in the First Amendment context that infringement of substantive rights may not be defended by a procedural protection accompanying the deprivation, "but it is a defense to a claim of deprivation of property, since such a deprivation is permitted by the due process clause provided there is no denial of due process," citing Parrett v. City of Connersville, 737 F.2d at 690, 697 (7th Cir. 1984)); see also Jackson v. Burke, 256 F.3d 93, 96 (2d Cir. 2001) (dismissing due process claim for failure to exhaust but considering equal protection claim nonetheless).

The plaintiffs' claim alleging discriminatory treatment will not be equated with a due process claim and subjected to the exhaustion requirement. Defendants' motion to dismiss the amended complaint on this ground will be denied.

## C. <u>Failure to State a Claim</u>

Plaintiffs allege that the defendants intentionally, with personal animus, interfered with and delayed the completion of plaintiffs' subdivision application until a moratorium could be passed. They add that they "have incurred substantial engineering, archeological and other costs in attempting to address the alleged and fabricated concerns of the defendants." (Amended Compl. ¶ 84.)

"The Equal Protection Clause requires that the government treat all similarly situated people alike." <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001) (citing <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985)). Such claims are generally brought by persons alleging discrimination based on their membership in a protected class. However, plaintiffs may bring suit as a "class of one" where they allege that government officials intentionally treated them differently from others similarly situated and that there is no rational basis for the difference in treatment. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam). Such "class of one" cases are common in the context of local zoning disputes. <u>Millar v. Ojima</u>, 354 F. Supp. 2d 220, 227 (E.D.N.Y. 2005).

First, defendants argue that the plaintiffs have not alleged that there were similar subdivisions in respect to archeological concerns, water system requirements or the Saratoga County Planning Board. Indeed, the Second Circuit recently addressed the standard for demonstrating similarity in "class of one" cases, and referred to it as "extremely

high." See Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005).[1]  Nonetheless, the defendants require too much of plaintiffs at this stage of the litigation.

As noted above, the Supreme Court recognized "class of one" cases in the context of local zoning disputes in Orech.  In that case plaintiffs alleged that the village demanded a 33-foot easement from them and only a 15-foot easement from other property owners seeking access to municipal water.  Orech, 528 U.S. at 563.  The plaintiffs had not "named names" of other property owners but made the general allegation that similarly situated property owners had been asked for a different easement.  "The Supreme Court found that such an allegation could 'fairly be construed' as sufficient for stating an equal protection claim."  DeMuria, 328 F3d at 707 (citing Olech, 528 U.S. at 565).

The Second Circuit relied on Orech in DeMuria v. Hawkes, to preserve an Equal protection claim.  328 F.3d 704, 707 (2d Cir. 2003).  The plaintiffs in DeMuria made a "general" and "relatively bare" allegation that the defendant police officer gave them a different standard of police protection than that typically afforded a resident [the town]" and alleged facts that the officer was in violation of his duty as an officer.  DeMuria, 328 F.3d at 707.  The DeMuria court found the allegations sufficient to meet the minimum level

---

[1] In the context of an employment disciplinary dispute the court defined the standard as follows:

> We deem that test to require a plaintiff in such a "class of one" case to show that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake. See Olech, 528 U.S. at 565 (Singling out must be "intentional[].").

Neilson, 409 F.3d 100, 105 (2d Cir. 2005).

established in Orech for "class of one" claims at the pleading stage and the action was remanded for further proceedings. Id.

Here, plaintiffs allege that no other pending subdivisions were required to join a new water district or were rejected on that basis (Amended Compl. ¶ ¶ 63, 64). They also allege that no other pending subdivisions were required to undergo any form of archaeological testing. Id. at ¶ ¶ 71, 73. Plaintiffs have set forth facts which allege that the defendants abused their discretion in requiring unnecessary studies and setting up obstacles to their subdivision application. In light of Orech and Demuria, this is sufficient for purposes of stating a "class of one" Equal Protection claim. Concerns as to plaintiffs' ability to prove their allegations do not defeat their claim at the pleading stage. See DeMuria v. Hawkes, 328 F.3d at 707.

Second, if it is determined that plaintiffs have sufficiently alleged that others who were similarly situated were treated differently, defendants argue that plaintiffs failed to allege "either that there was no rational basis for the unequal treatment received, see Olech, 528 U.S. at 565, or that the denial of the application was motivated by animus." Harlen, 273 F.3d at 494. "[T]he allegation of an impermissible motive and of animus is sufficient to establish an equal protection issue." DeMuria, 328 F.3d at 707.

Returning to the same case law, in Olech the plaintiffs' general allegation that the Village was "irrational and wholly arbitrary" in requiring a wider easement was adequate for pleading purposes. Orech, 528 U.S. at 563. Plaintiffs had alleged that they had previously filed a successful lawsuit against the Village. In DeMuria, the plaintiff alleged that the defendant police officer "acted maliciously and arbitrarily because they were involved in a

dispute with his friend." DeMuria, 328 F.3d at 707. This pleading was deemed sufficient.

Here, plaintiffs allege that the defendants acted with impermissible motive and animus in order to punish them for their business activities. (Amended Complaint ¶ ¶ 80 -83.) They provide allegations in support such an inference, which must be accepted as true on a motion to dismiss. Grandon, 147 F.3d at 188. Some of the defendants clearly opposed the plaintiffs' destruction of a historic barn on the subject property. (Amended Complaint ¶ 22.) Defendant Littman began to oppose plaintiffs' plans after being rejected as a potential broker for the proposed properties. Id. at ¶19. There was a confrontation between plaintiff Robert A. McCormick and defendant Scherer regarding the barn which resulted in the filing of civil charges. Id. at ¶ 23. At one point plaintiffs filed a Notice of Claim against the Town. Id. at ¶ 26. The defendants sent a private investigator to the home of plaintiff Robert J. McCormick and plaintiff's former counsel in an effort to intimidate them. Id. at ¶ ¶ 27, 28. These facts are sufficient to support an inference of animus.

Plaintiffs have set forth sufficient allegations that they were treated differently than similarly situated subdivision applicants due to personal animus in order to state an Equal Protection claim.

### D. Qualified Immunity

"Qualified immunity shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sound Aircraft Servs. v. Town of E. Hampton, 192 F.3d 329, 334 (2d Cir. 1999) (citations omitted). Defendants point out that "[b]ecause the focus of the qualified immunity inquiry is on the

objective reasonableness of the defendant[s'] actions, motivation does not come into play." Id.

The individual defendants argue that they are entitled to qualified immunity because their acts were objectively reasonable regardless of their motives. Plaintiffs argue that reasonable officials ought to have known that their discriminatory acts were unconstitutional. Taking the allegations of the amended complaint as true, it was not objectively reasonable to require additional studies or set up obstacles to zoning applications based on discriminatory factors unrelated to the purposes of the zoning laws. The individual defendants' motion to dismiss based upon the allegations in the amended complaint on grounds of qualified immunity will be denied.

Plaintiffs acknowledge that their allegations address defendants Littman, Scherer and Barrett. The remaining defendants have sufficient notice as to the claims against them and plaintiff is entitled to discovery. Defendants' arguments are best addressed on a motion for summary judgment.

## IV. **CONCLUSION**

Plaintiffs are not required to exhaust state judicial remedies before bring an Equal Protection claim in federal court. Plaintiffs have set forth sufficient allegations to state an Equal Protection claim. The individual defendants are not entitled to qualified immunity at this stage of the litigation.

Therefore it is

ORDERED that

1. Defendants' motion to dismiss the amended complaint is DENIED; and

2. Defendants shall file and serve an answer to the amended complaint on or before June 6, 2006.

IT IS SO ORDERED.

_____
David N. Hurd
District Judge

Dated: May 23, 2006
       Utica, New York.